United States District Court
Southern District of Texas
ENTERED
October 27, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CRYSTAL WALKER GREEN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:25-cv-01159 |
| | § | |
| CENTERPOINT ENERGY, | § | |
| | § | |
| *Defendants*. | § | |

**ORDER**

Pending before this Court is Defendant CenterPoint Energy's ("Defendant" or "CenterPoint") Motion for Summary Judgment. (Doc. No. 18). Plaintiff, Crystal Walker Green, ("Plaintiff" or "Green") responded in opposition. (Doc. No. 20). Defendant replied. (Doc. No. 21). Defendant also filed a Motion to Strike Plaintiff's Summary Judgment Evidence. (Doc. No. 22). Plaintiff replied in opposition. (Doc. No. 23). After reviewing the briefing and applicable law, the Court **GRANTS** Defendant's Motion. (Doc. No. 18).

## I. BACKGROUND

Plaintiff was employed by CenterPoint Energy for 17 years. (Doc. No. 1, ¶ 10). She served primarily as a Credit Supervisor within the Customer Service Group before applying for a position as a Continuous Improvement ("CI") Consultant. (Doc. No. 18, p. 4). The CI department was revamped in 2021 "with the goal of driving operational efficiency, safety protocols, and cross-functional process enhancements across the company." (Doc. No. 18, Ex. A, ¶ 3). In this role, Plaintiff was expected to identify and facilitate improvement both internal and external to the company and lead teams in implementing improvement plans. (Doc. No. 18, Ex. B-1). To aid her transition to this role, Plaintiff was paired with more senior consultants in the department, Tynesha

Smith and Larry Balkin, who served as her coaches or mentors. (Doc. No. 18, Ex. A, ¶ 7). Plaintiff initially reported to the CI Director, Rachel Bigelow. (Doc. No. 18, Ex. B. ¶ 5). In early 2023, Bigelow learned that Plaintiff was struggling in the new role. (*Id.* ¶ 8).

According to Defendant, Caroline Geiger became the Manager of Plaintiff's division of the CI Department in the spring of 2023. (*Id.* ¶ 9). When Geiger became manager, she implemented rigorous standards by which the CI Consultants were uniformly evaluated. (*Id.* ¶ 6). In her Declaration, Geiger stated that she became aware of Plaintiff's underperformance when she first became Manager: Bigelow identified Plaintiff as someone who was struggling in her role as CI consultant, and clients working with Plaintiff complained that her work was inadequate. (*Id.* ¶¶ 8-10). Bigelow asked Geiger to see if Plaintiff would be interested in transferring to a different position, but Plaintiff declined to transfer positions. (Doc. No. 18, Ex. A, ¶ 9). Geiger responded by providing Plaintiff with "direct and actionable coaching." (*Id.* ¶ 9). From June 2023 through the time of her termination, Geiger made consistent efforts to improve Plaintiff's performance. (*Id.* ¶ 12). Geiger had weekly one-on-one meetings with Plaintiff. (Doc. No. 18, Ex. E, 93:8-14). During one of these meetings, Geiger stated that she did not feel as though Plaintiff was a "good fit" for this role. (*Id.* at 94:1-5; Ex. B, ¶ 14).

In December of 2023, Geiger contacted Katherine Radke, Manager of Human Resources ("HR") regarding the issues she was having with Plaintiff's performance and began the process of developing a Performance Improvement Plan ("PIP") for Plaintiff to follow. (Doc. No. 18, Ex. B, ¶ 13). In January, Geiger learned that Plaintiff was resisting collaboration with her assigned mentor, Tynesha Smith. (*Id.* ¶ 14). On February 5, 2024, Geiger placed Plaintiff on a PIP which Plaintiff refused to sign. (*Id.* ¶¶ 15-16). Plaintiff instead complained to Radke and Bigelow that the PIP was insufficiently detailed and failed to provide her with examples and actionable tasks.

(*Id.* ¶ 17). Both Bigelow and Radke encouraged Plaintiff to seek clarification with Geiger. (Doc. No. 18, Ex. A, ¶ 11; Ex. C, ¶ 7). Geiger amended the PIP on February 14, 2024, to provide Plaintiff with more detailed guidance to improve her performance. (*Id.*).

Immediately after being placed on the PIP, Plaintiff contacted the Manager of Ethics and Compliance, Jessica Gomez, to complain that the PIP was implemented without prior discussion or adequate explanation. (Doc. No. 18, Ex. D, ¶ 6). Gomez immediately began conducting an investigation into Plaintiff's complaint, interviewing Geiger, Bigelow, and others without informing them as to the nature of the complaint nor that the complaint was filed by Plaintiff. (*Id.* ¶ 7). Radke was also informed that Plaintiff had filed a complaint but was not informed as to the nature of the complaint. (*Id.*). Gomez conducted a comprehensive investigation which she closed on May 15, 2024. (*Id.* ¶ 9).

Rather than improve in her performance after being placed on the PIP, Geiger testified that Plaintiff's performance continued to decline in the months that followed. (Doc. No. 18, Ex. B, ¶ 18). Specifically, Geiger noted that multiple clients were frustrated that Plaintiff did not seem to understand the projects on which she was working. (*Id.*). In April 2024, Geiger, in consultation with Bigelow and Radke, decided to terminate Plaintiff. (Doc. No. 18, Ex. B, ¶ 21). Radke, knowing that it was CenterPoint HR standard practice to allow any pending investigation to be completed before making termination decisions, advised Geiger to refrain from proceeding until Radke provided them clearance without telling them (Geiger and Bigelow) the reason for the delay. (Doc. No. 18, Ex. C, ¶ 10). On May 15, 2024, Geiger delivered the decision to terminate Plaintiff. (Doc. No. 18, Ex. B, ¶ 23).

Plaintiff tells a different story. From Plaintiff's perspective, she had never received a negative comment or performance review until Geiger became her supervisor. (Doc. No. 18, Ex.

E, 97:4-7). Plaintiff claims that after Geiger became her supervisor, she was denied opportunities to work collaboratively and attend conferences and trainings that her peers were allowed to attend. (*Id.* at 108:6-109:25). She also testified that Geiger singled her out for poor work performance and placed her on a PIP when others also had issues with their executive summaries and were not placed on PIPs. (Doc. No. 20, Ex. 1, p. 3). Plaintiff noted that the only difference between herself and her coworkers was her race, age, national origin, and religious beliefs. (Doc. No. 1, ¶ 12).

## II. LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant.

*Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## III. ANALYSIS

### A. Age Discrimination Claim

Plaintiff claims that she has asserted a claim for age discrimination. She has not. Specifically, Plaintiff pleads "Title VII Employment Discrimination—Disparate Treatment, "Section 1981 Discrimination," and "Section 12203 Retaliation." (Doc. No. 1, ¶¶ 17-18). Plaintiff later clarified that she intended to plead retaliation under Title VII, not the ADA. She did not provide any clarification regarding her alleged age discrimination claim. Age discrimination is not included within Title VII or § 1981. Plaintiff has never stated a claim under the Age Discrimination in Employment Act which prohibits an employer from "discharge[ing] any individual . . . because of such individual's age."[1] 29 U.S.C. § 623(a)(1). Therefore, Plaintiff has not pled a claim for age discrimination.

Even if this Court were to assume *arguendo* that Plaintiff's complaint actually states a claim for age discrimination, Plaintiff failed to respond to Defendant's argument regarding this claim. (Doc. No. 20). This Court's Local Rules state that "[f]ailure to respond to a motion will be taken as a representation of no opposition." S. Dist. Tex. L.R. 7.4; see also Hanen L.R. 7(D). Therefore, the local rules would allow the Court to grant Defendant's motion on this issue as it should be considered unopposed.

Nevertheless, the Fifth Circuit has explained that "although we have endorsed the adoption of local rules that require parties to file responses to opposed motions, we have not approved the

[1] Plaintiff 's complaint also does not refer to any claim under the Texas Commission on Human Rights Act. V.T.C.A. § 21.001 et seq.

automatic grant, upon failure to comply with such rules, of motions that are dispositive of the litigation." See *Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006) (citing *Johnson v. Louisiana*, 757 F.2d 698, 707-09 (5th Cir. 1985); *Ramsey v. Signal Delivery Serv.*, 631 F.2d 1210, 1213-14 (5th Cir. 1980)). In other words, where a party does not respond to a summary judgment motion, such failure does not permit the court to enter a "default" summary judgment. *Eversley v. MBank Dall.*, 843 F.2d 172, 174 (5th Cir. 1988). Consequently, the Court will address the merits.

Assuming *arguendo* that Plaintiff has properly pled and stated a claim for age discrimination, the Court finds that there is no genuine dispute of material fact that Defendant terminated Plaintiff for her age nor that it replaced Plaintiff with someone younger. To establish such a prima facie case, Plaintiff must show that age was the but-for cause of her termination. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). If she chooses to do so using indirect evidence, the *McDonnell Douglas* burden-shifting framework applies. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 456 (5th Cir. 2019); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). This requires the Plaintiff to first put forth the prima facie case of age discrimination before the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision. *Id.* At which point, the burden shifts back to the Plaintiff to show that the proffered reason is a pretext for discrimination. *Id.*

To put forth a prima facie claim for age discrimination, Plaintiff must show (1) she was discharged, (2) she was qualified for her position, (3) she was within her protected class at the time of the discharge, and (4) she was either replaced by someone outside of the protected class or otherwise discharged due to her age. *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). The summary judgment evidence shows that Plaintiff does not know if anyone took over her role, let alone if that person was younger than her; that her coworkers made sporadic

comments about her style of working being "old school," although this was never stated by her supervisor nor did Plaintiff find it offensive; and Plaintiff never heard her supervisors make any comments regarding her age. (Doc. No. 18, Ex. E, 190:22-194:7). Based on the facts presented on the summary judgment record, Plaintiff has failed to state a prima facie claim of age discrimination even if properly pled.

**B. Retaliation Claim**

Plaintiff asserts in her Complaint a claim for retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12203. (Doc. No. 1). Nevertheless, Plaintiff now states that she does not intend to assert a claim for retaliation based on any disability but rather on her race and age. She acknowledges this as a mistake and clarifies that she intended to assert a Title VII-based retaliation claim alongside her claim for race discrimination. (Doc. No. 15). Plaintiff has not amended her complaint.

Defendant argues that Plaintiff has thus failed to plead a claim for retaliation under Title VII. Alternatively, it argues that even if Plaintiff has pled a retaliation claim, she fails to state a prima facie claim of retaliation as a matter of law. Again, Plaintiff did not respond to this argument in her response to Defendant's motion. (Doc. No. 20). The Court will consider whether Defendant is entitled to summary judgment on this claim for Title VII retaliation.

Title VII prohibits employers from discriminating against any employee for having engaged in a statutorily protected activity. 42 U.S.C. § 2000e-3(a). Where a retaliation claim is premised on circumstantial evidence, it is analyzed under the *McDonnell Douglas* burden-shifting framework. *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish her prima facie case, Plaintiff must demonstrate that: (1) she engaged in protected activity, (2) an adverse employment action

occurred, and (3) a causal link exists between the protected activity and the adverse employment action. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 348 (5th Cir. 2007).

Defendant does not dispute that Plaintiff engaged in protected activity by meeting with the Human Resources representative. Defendant argues, however, that Plaintiff cannot establish causation as Plaintiff was placed on a PIP as part of an ongoing and well-documented disciplinary process before she ever complained to HR. (Doc. No. 18, Ex. E, 147:24-149:13; 170:14-20). Rather than a response to Plaintiff's protected activity, the ultimate decision to terminate Plaintiff was a continuation of Defendant's efforts to remedy Plaintiff's deficient performance. Geiger placed Plaintiff on a PIP on February 5, 2024, and only then did Plaintiff contact HR. (Doc. No. 18, Ex. E, 156:21-157:17). Further, the summary judgment evidence indicates that neither Geiger nor Bigelow, the two individuals that made the decision to terminate, were aware that Plaintiff had complained to HR regarding Geiger. (Doc. No. 18, Ex. A, ¶ 15; Ex. B, ¶ 22). This is further corroborated by declarations from Gomez and Radke indicating that they intentionally withheld information regarding the complaint—and specifically that Plaintiff was the complainant—when interviewing Geiger and Bigelow as part of the HR investigation into Plaintiff's complaint. (Doc. No. 18, Ex. C, ¶ 10; Ex. D, ¶ 7).

Bigelow and Geiger were aware, however, that Plaintiff had consulted with Radke in HR after being placed on the PIP because Geiger amended the PIP in response. Plaintiff could, therefore, assert that the disciplinary actions from then on were in retaliation for Plaintiff immediately complaining to HR regarding the PIP. Furthermore, Plaintiff complained on February 5th and was terminated by May 16th and could argue that the temporal proximity raises the inference of causation. The Fifth Circuit rejected a similar contention in *Strong v. Univ. Healthcare Sys., L.L.C.* 482 F.3d 802, 807 (5th Cir. 2007). There, the court held that where the plaintiff had a

disciplinary record before and after engaging in protected activity, temporal proximity was insufficient. *Id.* Similarly, in *Sewell v. Smith Int'l, Inc.*, the court held that where there was a documented history of discipline related to poor work performance both pre and post protected activity, temporal proximity was insufficient to raise a fact issue. *Sewell v. Smith Int'l, Inc.*, No. H-08-2063, 2009 WL 10694753, at *10 n.13 (S.D. Tex. 2009). Here, Bigelow identified issues with Plaintiff's job performance before Geiger ever became Plaintiff's manager. Geiger also had been providing Plaintiff with one-on-one coaching on specific aspects of her job performance, noting specific examples of where Plaintiff's performance had fallen short beginning in August of 2023. (Doc. No. 18, Ex. B-4). The fact that this continued after Plaintiff complained about her PIP and eventually culminated in her termination does not establish causation.

Even assuming that these facts were sufficient to state a claim regarding retaliation, Plaintiff is still unable to raise a fact issue that she was terminated in retaliation for her HR complaint three months prior rather than for the well-documented issues regarding her work performance. Thus, the summary judgment record does not create a fact issue regarding Plaintiff's retaliation claim.

### C. Discrimination on the Basis of Race

#### *i. Legal Standard*

Title VII of the Civil Rights Act makes it unlawful for an employer to discriminate against any individual on the basis of that individual's race, religion, color, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove intentional discrimination under Title VII either with direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 S.W.3d 219, 222 (5th Cir. 2000). Where a plaintiff relies on circumstantial evidence, the Court applies the *McDonnell Douglas* burden-shifting framework. *Id.* Under that framework, the plaintiff bears the

burden of establishing his prima facie case of discrimination by showing: (1) he is a member of a protected class; (2) he was qualified for the position or benefit; (3) he was subject to an adverse employment action; and (4) others similarly situated but outside of plaintiff's protected class experienced more favorable treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "Similarly situated" is defined narrowly and requires proof of a nearly identical comparator outside of Plaintiff's protected class. *West v. City of Houston, Texas*, 960 F.3d 736, 740 (5th Cir. 2020). "Employees are similarly situated when they (1) held the same job or responsibilities, (2) shared the same supervisor or had their employment status determined by the same person, and (3) have essentially comparable violation histories." *Id.* (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009))(internal citations omitted).

The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. The burden on the employer is only one of production, not persuasion. *Russell*, 235 S.W.3d at 222. If the employer carries its burden, Plaintiff then must produce substantial evidence that the employer's proffered reason is a pretext for discrimination. *Green v. HCTec Partners, LLC*, No. 24-20554, 2026 WL 839112, at *2 (5th Cir. Mar. 26, 2026) (quoting *Watkins v. Tregre*, 997 F.3d 275, 281 (5th Cir. 2021))(internal citations omitted). In the context of summary judgment, plaintiff bears the burden to raise a genuine issue of fact regarding pretext. *Id.* (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017)).

*ii. Prima Facie Case*

Defendant does not dispute that Plaintiff is a member of a protected class as a Black female, that she was qualified for her position, or that she suffered an adverse employment action in being terminated. (Doc. No. 18, at 12). It argues, however, that she fails to state a prima facie case for

discrimination because she cannot identify a qualifying comparator that Defendant treated more favorably. (*Id.*). As noted above, the Fifth Circuit has interpreted this to require proof of a nearly identical comparator outside of Plaintiff's protected class.

Plaintiff points to four coworkers, Matthew Paradise, Tynesha Smith, Larry Balkin, and Dane Sawyer, as possible comparators to whom Defendant allegedly provided more opportunities. (Doc. No. 18, Ex. E, 172:4-173:25). Each of these fail as a matter of law. Plaintiff was a CI Consultant. (Doc. No. 18, Ex. B, ¶ 24). Smith and Balkin were "Leads" in the CI Department, and Sawyer was a Senior Consultant. (*Id.*). On many occasions, Smith was even coaching or mentoring Plaintiff in her consulting role. (*Id.* ¶ 29). Paradise held the same position as Plaintiff, CI Consultant. (*Id.* ¶ 24). He did not, however, have a comparable disciplinary history as he did not have to be coached to the same extent as Plaintiff and was never placed on a PIP. (*Id.*).

Plaintiff also mentioned Matthew Pierce and Chance Lyons in her deposition testimony as individuals holding the same position who were afforded opportunities to attend trainings or work on projects that Plaintiff was not allowed to attend or work on. (Doc. No. 18, Ex. E, 109:1-5; 191:12-13). There is no evidence on the summary judgment record regarding Pierce and Chance's disciplinary histories. Therefore, Plaintiff fails to state a prima facie claim for race discrimination as she cannot point to a qualifying comparator.

*iii. Pretext*

Assuming *arguendo* that Pierce or Lyons could qualify as a sufficient comparator to state a prima facie claim of race discrimination, Plaintiff cannot raise a genuine issue of material fact regarding pretext. Defendant has a well-documented history of poor performance by Plaintiff leading up to her termination. There is no evidence in the summary judgment record that anyone at CenterPoint ever discriminated against Plaintiff except for her personal belief that she was being

targeted because of her race. *See Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996) (holding that conclusory allegations that a proffered reason was pretextual were insufficient without supporting evidence). Plaintiff further attempts to prove pretext by disputing the facts underlying the decision to place her on a PIP and subsequently fire her. The Fifth Circuit has held that this is insufficient to raise a fact issue regarding pretext for a decision to terminate. *See LeMaire v. LA Dept. of Transp. and Development*, 480 F.3d 383, 391 (5th Cir. 2007) ("LeMaire must do more than just dispute the underlying facts and argue that LaDOTD made the wrong decision in order to survive summary judgment."); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) ("Merely disputing Appellee's assessment of his performance will not create an issue of fact.").

## CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. No. 18).

Signed on this 27th day of October, 2026.

Andrew S. Hanen
United States District Judge